THOMAS V. GIRARDI - BAR NO. 36603
J. PAUL SIZEMORE - BAR NO. 254981
V. ANDRE SHERMAN - BAR NO. 198684
GIRARDI | KEESE
1126 Wilshire Boulevard
Los Angeles, California 90017
(213) 977-0211
Facsimile (213) 481-1554

ORIGINAL
FILED

MAR 2 0 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Attorneys for: Plaintiff

E-filing

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

CURT CARLSON,

        Plaintiff,

vs.

PFIZER, INC., PHARMACIA
CORPORATION, and G.D. SEARLE LLC,
(FKA G.D. SEARLE & CO.),

        Defendants.

MDL No. 1699

Case No. CV 08 1558

**CIVIL COMPLAINT**

**JURY TRIAL DEMANDED**

//
//
//

1

**COMPLAINT**

## COMPLAINT

## INTRODUCTION

This case involves the prescription drug Bextra® (Valdecoxib), which was manufactured, sold, distributed and promoted by defendant primarily as a pain reliever. Defendant misrepresented that Bextra® was a safe and effective treatment for osteoarthritis, management of acute pain in adults, and treatment of menstrual pain, when in fact the drug caused serious medical problems.

## JURISDICTION AND VENUE

1.    The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. Section 1332. The amount in controversy exceeds $75,000.00, exclusive of interest and costs, and the parties are citizens of different states. Venue in this Court is proper pursuant to 28 U.S.C. §1391 in that substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District, and Defendants are subject to personal jurisdiction in this District.

## GENERAL ALLEGATIONS

2.    This action is an action for damages brought by Plaintiff who was prescribed and supplied with, received, and who ingested and consumed the prescription drug Bextra®, as tested, studied, researched, evaluated, endorsed, designed, formulated, compounded, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed, sold or otherwise placed in the stream of interstate commerce by Defendant G.D. Searle & Co., Pharmacia Corporation, Monsanto Company, and Pfizer, Inc. (collectively the "Pharmaceutical Company Defendants"). This action seeks, among other relief, general and special damages and equitable relief in order to enable the Plaintiff to treat and monitor the dangerous, severe and life-threatening side

## COMPLAINT

effects caused by Bextra®. This action seeks, among other relief, damages for medical care provided to Plaintiff and punitive damages for Defendants' conscious disregard for Plaintiff's safety.

3. The injuries and damages of Plaintiff were caused by the wrongful acts, omissions, and fraudulent misrepresentations of Defendants.

4. At all times herein mentioned, each of the Defendants was the agent, servant, partner, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture and rendered substantial assistance and encouragement to the other Defendants, knowing that their conduct constituted a breach of duty owed to Plaintiff.

5. There exists, and at all times herein mentioned, there existed, a unity of interest in ownership between certain Defendants and other certain Defendants such that any individuality and separateness between the certain Defendants has ceased and these Defendants are the alter-ego of the other certain Defendants and exerted control over those Defendants. Adherence to the fiction of the separate existence of these certain Defendants as an entity distinct from other certain Defendants will permit an abuse of the corporate privilege and would sanction fraud and would promote injustice.

6. The injuries and damages of Plaintiff were caused by the wrongful acts, omissions, and fraudulent misrepresentations of Defendants.

7. At all times herein mentioned, the Defendants, and each of them were engaged in the business of, or were successors in interest to, entities engaged in the business of research, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising for sale or selling the prescription drug known as Bextra® (Valdecoxib) for the use and ingestion by Plaintiff.

8. At all times herein mentioned, the Defendants, and each of them, were corporations authorized to do business in the state of residence of each individually named Plaintiff.

**COMPLAINT**

9.     At all times herein mentioned, the officers and directors of the Defendants named herein participated in, authorized and directed the production and promotion of the aforementioned product when they knew, or with the exercise of reasonable care should have known, of the hazards and dangerous propensities of said product and thereby actively participated in the tortious conduct which resulted in the injuries suffered by Plaintiff herein.

10.     Plaintiff files this lawsuit within the applicable limitations period of first suspecting that said drugs were the cause of Plaintiff's injuries.  Plaintiff could not, by the exercise or reasonable diligence, have discovered the wrongful cause of Plaintiff's injuries at an earlier time because at the time of  Plaintiff's injuries the cause was unknown to Plaintiff.  Plaintiff did not suspect, nor did Plaintiff have reason to suspect, the cause of the Plaintiff's injuries, or the tortious nature of the conduct causing the injuries, until less than the applicable limitations period prior to the filing of this action.  Additionally, Plaintiff was prevented from discovering this information sooner because Defendants herein misrepresented and continue to misrepresent to the public and to the medical profession that the drugs are safe and free from serious side effects, and Defendants have fraudulently concealed facts and information that could have led Plaintiff to discover a potential cause of action.

/ /
/ /
/ /
/ /
/ /

4

**COMPLAINT**

## PARTIES

### The Plaintiff

11.    Plaintiff CURT CARLSON was prescribed and supplied with, received, and took, ingested and consumed the prescription drug Bextra® (Valdecoxib) and was injured as a result. Plaintiff is a resident of the State of Illinois.

### The Defendants

12.    Defendant G.D. Searle & Co. ("Searle") tested, studied, researched, evaluated, endorsed, designed, formulated, compounded, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed, sold and distributed, or otherwise placed in the stream of interstate commerce, Bextra® (Valdecoxib), which was ingested by Decedent. Defendant Searle was and is an American pharmaceutical company, incorporated under the laws of the State of Delaware, whose principal place of business is 235 E. 42nd Street, New York, New York 10017. On information and belief, at all times relevant herein, said entity developed, manufactured, marketed, distributed, and sold Bextra® (Valdecoxib) in interstate commerce, including the state of residence of Plaintiff.

13.    Defendant Pharmacia was and is an American pharmaceutical distribution company, having its principal place of business and corporate headquarters at 235 E. 42nd Street, 26th Floor, New York, New York 10017-5755. On information and belief, at all times relevant herein, said entity marketed, distributed and sold Bextra® (Valdecoxib) in interstate commerce, including the state of residence of each individually named Plaintiff. Defendant Pharmacia is a Delaware Corporation licensed and registered to do business in interstate commerce and can be served through its registered agent: CT Corporation, 817 W. 7th Street, Los Angeles, CA 90017.

14.    Defendant Pfizer, Inc (hereinafter "Pfizer") is a Delaware corporation, having its principal place of business and corporate headquarters at 235 East 42nd Street, New York, New York 10017-5703. At all times relevant hereto Pfizer was in the business of marketing, selling and distributing the pharmaceutical product Bextra® (Valdecoxib).

5

## COMPLAINT

Defendant Pfizer is licensed and registered to do business in interstate commerce and may be served through its agent: CT Corporation, 817 W. 7th Street, Los Angeles, CA 90017.

15.    At all times herein mentioned, the officers and directors of the Defendants named herein participated in, authorized and directed the production and promotion of the aforementioned product when they knew, or with the exercise of reasonable care should have known, of the hazards and dangerous propensities of said product and thereby actively participated in the tortuous conduct which resulted in the injuries and damages suffered by Plaintiff herein.

16.    This Complaint seeks redress for damages sustained as the result of Plaintiff's use of Bextra® (Valdecoxib), manufactured and sold by Pharmacia, G.D. Searle, Monsanto and Pfizer, the Defendants herein

## OVERVIEW

17.    Bextra® (Valdecoxib) is a pharmaceutical treatment for musculoskeletal joint pain associated with osteoarthritis and rheumatoid arthritis among other maladies. Defendants Searle, Pharmacia, Monsanto and Pfizer did manufacture, design, package, market and distribute this drug. Defendants Searle, Pharmacia and Pfizer (hereinafter "Defendants") encouraged the use of this drug in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects.

18.    These Defendants aggressively marketed this drug directly to the consuming public, although only available through prescription, through the use of various marketing mediums, including, but not limited to, print and television advertisements. These Defendants did this to increase sales and profits.

19.    The market for such pain relieving drugs is huge. Bextra® was originally indicated for osteoarthritis, adult rheumatoid arthritis and pain. Approximately twenty million Americans suffer from osteoarthritis alone, while an additional two million suffer from rheumatoid arthritis.[1]

---

[1] Statistics are from Centers for Disease Control and Prevention (CDC), National Institute of Arthritis and Musculoskeletal and Skin Diseases, part of the National Institutes of Health, and the Arthritis Foundation.

**COMPLAINT**

20.    Defendants engaged in extensive advertising directed to consumer. For the period 2003 through 2004, Bextra® brought in approximately $2 billion in revenue.[2]

21.    At all times relevant hereto, the Defendants actually knew of the defective nature of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by this product. Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to Plaintiff's rights, and hence punitive damages are appropriate.

22.    The damages sought herein are the direct and proximate result of Defendants' wrongful conduct in connection with designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the prescription drug Bextra® (Valdecoxib).

23.    At all times relevant hereto, Defendants were engaged in the business of designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the pharmaceutical drug Bextra® (Valdecoxib) throughout the United States.

24.    Had Defendants properly disclosed the risks associated with using Bextra® (Valdecoxib), Plaintiff would not have taken Bextra® for treatment of pain associated with Plaintiff's injury

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

25.    Bextra® (generically known as Valdecoxib) is second generation among the vaunted class of drugs called COX-2 inhibitors, which are touted as anti-inflammatory agents that cause less gastrointestinal damage than older, standby pain relievers like aspirin or ibuprofen. However, not only are their gastrointestinal benefits insignificant, they elevate the risk of heart attack. Bextra® has a higher level of COX-2 inhibition than its

---

[2] Pfizer Annual Report to Shareholders, 2004.

**COMPLAINT**

predecessor at Searle, Celebrex, and is substantially similar in inhibition levels to Merck & Co., Inc.'s drug, Vioxx®.

26.    The Food and Drug Administration approved Bextra® on November 19, 2001for the treatment of management of acute pain in adults, and for relief of the signs and symptoms of osteoarthritis and rheumatoid arthritis.  Subsequent to FDA approval, Bextra® was widely advertised and marketed by Defendants as a safe and effective pain relief medication.

27.    Bextra® is a member of a class of drugs known as "NSAIDs" (non-steroidal anti-inflammatory drug), but more specifically contains cyclooxygenase 2 ("COX-2") inhibitory properties.  Generally, NSAIDs prevent the formation of fatty acid cyclooxygenases, of which there are two known types ("COX-1" and "COX-2").  Bextra® is generally different than NSAIDs in that it is solely a COX-2 inhibitor.  The rationale being that if the COX-1 enzyme is unaltered, the patient will experience fewer gastrointestinal complications commonly associated with NSAIDs.  Further, the inhibition of COX-2 enzymes is said to decrease pain and inflammation.

28.    In addition to the aforementioned, Bextra® has been linked to several severe and life threatening medical disorders including, but not limited to, edema, changes in blood pressure, clotting, heart attack, stroke, seizures, kidney and liver damage, pregnancy complications, Stevens Johnson Syndrome and death.  These known material risks were not disclosed to or shared with Plaintiff by Defendants.

29.    Defendants' strategy during the premarket approval process has been to aggressively market and sell its products by falsely misleading potential users about the products and by failing to protect users from serious dangers that Defendants knew or should have known to result from use of these products.

30.    Defendants widely and successfully marketed Bextra® in the United States, by undertaking an advertising blitz extolling the virtues of Bextra® in order to induce widespread use of the products.  The marketing campaign consisted of advertisements, promotional literature to be placed in the offices of doctors and other health care providers, and other promotional materials provided to potential Bextra® users.

**COMPLAINT**

31.    The advertising program, as a whole, sought to create the image, impression and belief by consumers and physicians that the use of Bextra® was safe for human use, had fewer side effects and adverse reactions than other pain relief medications and would not interfere with daily life, even though Defendants knew these to be false, and even though the Defendants had no reasonable grounds to believe them to be true.

32.    Defendants purposefully downplayed and understated the health hazards and risks associated with Bextra®. Defendants, through promotional literature, audio conferences, professional meetings, and press releases deceived potential users of Bextra® by relaying positive information, including testimonials from satisfied users, and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects. Defendants concealed material relevant information from potential Bextra® users and minimized user and prescriber concerns regarding the safety of Bextra®.

33.    In particular, in the materials produced by Defendants, Defendants falsely misrepresented the severity, frequency and nature of adverse health effects caused by Bextra®, and falsely represented that adequate testing had been conducted concerning Bextra®.

34.    Searle and its agents and/or representatives misrepresented claims regarding the efficacy of Bextra®. In June 2003 Defendants completed a study that showed highly elevated risk for clotting, stroke and myocardial infarctions and had data from a second study by August 2004. The Defendants downplayed the significance of the negative cardiovascular thrombotic events in the studies as inconclusive as the studies were not long-term prospective randomized placebo controlled studies. According to Dr. Erick Topol, the need to conduct such long term studies prior to marketing this drug to humans was deemed "mandatory" and the patient population must include patients with both established cardiovascular artery disease and osteoarthritis as this group has the highest risk of further cardiovascular complication. [3] Studies by Dr. Topol [4] and Dr. Garrett Fitzgerald [5] as early as

[3] *The New England Journal of Medicine*, October 21, 2004.
[4] *Journal of the American Medical Association*, August 2001.
[5] *The New England Journal of Medicine*, October 21, 2004.

**COMPLAINT**

1999 showed that the inhibited platelet aggregation properties of Cox-2 inhibitors manifest itself in an increased risk of strokes and myocardial infarction.

35.    Defendants' product promotion failed to present serious and significant risks associated with Bextra® therapy for the intended population expected to take Bextra®, which could and did result in increased risks of clotting, stroke and myocardial infarction.

36.    As a result of the Defendants' advertising and marketing efforts, and representations concerning the subject products, Bextra® was and continued to be pervasively prescribed throughout the United States, until it was voluntarily withdrawn from the market in April of 2005.

37.    If Plaintiff had known the risks and dangers associated with Bextra®, Plaintiff would not have taken Bextra® and consequentially would not have been subject to its serious side effects.

## FIRST CAUSE OF ACTION
## STRICT LIABILITY – FAILURE TO WARN

38.    Plaintiff incorporates by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

39.    Defendants, directly or indirectly, negligently and/or defectively designed, tested, inspected, manufactured, assembled, developed, labeled sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed the drug Bextra® (Valdecoxib).

40.    At all times material hereto, Defendants had a duty to users and/or consumers of Bextra® (Valdecoxib), including Plaintiff, to exercise reasonable care in the design, testing, inspection, manufacture, assembly, development, labeling, sterilization, licensing, marketing, advertising, promotion, sale, packaging, supply and/or distribution of Bextra® (Valdecoxib).

41.    Defendants breached that duty and were negligent in the design, testing, inspection, manufacture, assembly, development, labeling, sterilization, licensing, marketing, advertising, promotion, sales, packaging, supply and/or distribution of Bextra®

**COMPLAINT**

(Valdecoxib) in that:  Bextra® (Valdecoxib) was defective when put on the market by Defendants; that with such defect, Bextra® (Valdecoxib) was reasonably certain to be dangerous when put to normal use; and that Defendants failed to use reasonable care in designing or making Bextra® (Valdecoxib) or in inspecting it for defects.  Specifically, defendants breached their duty by, among other things:

> Failing to include adequate warnings that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, to the potential risks and serious side effects of the drug;

> Failing to adequately and properly test and inspect the drug before placing the drug on the market;

> Failing to conduct sufficient testing and inspection of the drug which, if properly performed, would have shown that the drug had serious side effects, including, but not limited to, heart attack, stroke and/or death;

> Failing to adequately warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the potential risks and other serious side effects associated with the drug, including, among other things, heart attack, stroke and/or death;

> Failing to provide adequate post-marketing warnings or instructions after Defendants knew or should have known of the significant risks associated with the use of the drug;

> Failing to recall and/or remove the drug from the stream of commerce despite the fact that Defendants knew or should have known of the defective and unreasonably dangerous nature of the drug, including the significant health risks associated with the use of the drug.

> Encouraging misuse and overuse while failing to disclose the side effects of the drug to the medical, pharmaceutical and/or scientific communities

**COMPLAINT**

1  and users and/or consumers, including Plaintiff, in order to make a profit
2  from sales.

3      42.   Defendants knew or should have known that Bextra® (Valdecoxib) caused
4  unreasonably dangerous risks and serious side effects of which users and/or consumers of
5  the drug, including Plaintiff, were not aware.  Defendants nevertheless advertised,
6  promoted, marketed, sold, distributed and/or supplied Bextra® (Valdecoxib) knowing that
7  there were safer methods for pain relief.

8      43.   As a direct, legal, proximate and producing result of the negligence of
9  Defendants, Plaintiff sustained injuries including, among other things, a heart attack which
10 resulted in death in some cases.  In most of these cases, these injuries caused extensive pain
11 and suffering and severe emotional distress and substantially reduced Plaintiff's ability to
12 enjoy life.  In addition, Defendants' negligence caused Plaintiff to expend substantial sums
13 of money for medical, hospital, and related care.

14     44.   As a direct, legal, proximate and producing result of the negligence of
15 Defendants, Plaintiff was injured in health, strength and activity and suffered physical
16 injuries as well as mental anguish.  All of these said injuries caused Plaintiff intense anxiety,
17 distress, fear, pain, suffering and distress secondary to physical injury and damages.

18     45.   As a direct, legal proximate and producing result of the negligence of
19 Defendants, Plaintiff required reasonable and necessary health care treatment and services
20 and had incurred expenses therefore.  Defendants' negligence was a contributing cause of
21 Plaintiff's injuries and Plaintiff's economic and non-economic loss.

22     46.   By reason of the foregoing, Plaintiff was damaged by the negligence and
23 wanton and willful recklessness of the Defendants.  The amount sought herein exceeds the
24 jurisdictional limits of all lower courts that would otherwise have jurisdiction over this
25 matter.

26
27
28

**COMPLAINT**

## SECOND CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY
## DEFECTIVE DESIGN

47.    Plaintiff incorporates by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

48.    At all times material hereto, Defendants have engaged in the business of designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the drug Bextra® (Valdecoxib), which is defective and unreasonably dangerous to users and/or consumers of the drug, including Plaintiff.

49.    At all times material hereto, Bextra® (Valdecoxib) was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by Defendants in a defective and unreasonably dangerous condition in ways which include, but are not limited to one or more of the following:

When placed in the stream of commerce, the drug contained unreasonably dangerous design defects and was not reasonably safe and fit for its intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting users and/or consumers of the drug, including Plaintiff, to risks which exceeded the benefits of the drug;

The drug was insufficiently tested;

The drug caused harmful side effects that outweighed any potential utility;

The drug was not accompanied by adequate labeling or instructions for use to fully apprise the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff and his or her decedent in some cases, of the potential risks and serious side effects associated with its use;

13

**COMPLAINT**

In light of the potential and actual risk of harm associated with the drug's use, a reasonable person who had actual knowledge of this potential and actual risk of harm would have concluded that Bextra® (Valdecoxib) should not have been marketed in that condition.

50.    At all times the drug Bextra® (Valdecoxib) was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed, it was expected to reach, and did reach, users and/or consumers of the drug across the United States, including Plaintiff, without substantial change in the defective and unreasonably dangerous condition in which it was sold.

51.    At all times, Plaintiff used Bextra® (Valdecoxib) for its intended or reasonably foreseeable purpose.

52.    As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of Bextra® (Valdecoxib), Plaintiff sustained substantial injuries, including in some cases among other things, heart attack and/or stroke, resulting in death.  The defective and unreasonably dangerous condition of Bextra® (Valdecoxib) has caused Plaintiff to expend substantial sums of money for medical, hospital and related care.

### THIRD CAUSE OF ACTION
### NEGLIGENCE

53.    Plaintiff incorporates by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

54.    Defendants had a duty to properly manufacture, design, formulate, compound, test, produce, process, assemble, inspect, research, distribute, market, label, package, distribute, prepare for use, sell, prescribe and adequately warn of the risks and dangers of Bextra®.

55.    Defendants negligently and carelessly manufactured, designed, formulated, distributed, compounded, produced, processed, assembled, inspected, distributed, marketed,

14

**COMPLAINT**

1  labeled, packaged, prepared for use and sold the aforementioned products and failed to
2  adequately test and warn of the risks and dangers of the aforementioned products.

3      56.    Despite the fact that Defendants knew or should have known that Bextra®
4  caused unreasonable, dangerous side effects, Defendants continued to market Bextra® to
5  consumers including Plaintiff, when there were safer alternative methods of treating
6  osteoarthritis and acute pain.

7      57.    Defendants knew or should have known that consumers such as Plaintiff would
8  foreseeably suffer injury and death as a result of Defendants' failure to exercise ordinary
9  care as described above.  Defendants' negligence was a proximate cause of Plaintiff's
10 injuries, and the damages, harm and economic loss that Plaintiff suffered, and will continue
11 to suffer, as described and prayed for herein.

12

13 <center>FOURTH CAUSE OF ACTION</center>
14 <center>BREACH OF IMPLIED WARRANTY</center>

15     58.    Plaintiff incorporates by reference herein each of the allegations heretofore set
16 forth in this Complaint as though fully set forth herein.

17     59.    Prior to the time that the aforementioned products were used by Plaintiff,
18 Defendants impliedly warranted to Plaintiff and Plaintiff's agents and physicians that said
19 products were of merchantable quality and safe and fit for the use for which they were
20 intended.

21     60.    Plaintiff was unskilled in the research, design and manufacture of the
22 aforementioned products and reasonably relied entirely on the skill, judgment and implied
23 warranty of the Defendants in using the aforementioned products.

24     61.    The aforementioned product was neither safe for its intended use nor of
25 merchantable quality, as warranted by Defendants, in that Bextra® had dangerous
26 propensities when put to its intended use and would cause severe injuries to the user.

27     62.    As a result of the aforementioned breach of implied warranties by Defendants,
28 Plaintiff was injured and suffered the harm and damages as alleged herein.

<center>15</center>

<center>**COMPLAINT**</center>

## FIFTH CAUSE OF ACTION
## FOR BREACH OF EXPRESS WARRANTY

63.    Plaintiff incorporates by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

64.    At all times herein mentioned, Defendants expressly represented and warranted to Plaintiff and Plaintiff's agents and physicians, by and through statements made by Defendants or its authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that the aforementioned product was safe, effective, fit and proper for their intended use.  In reliance upon said warranties, Plaintiff purchased said product.

65.    In utilizing the aforementioned products, Plaintiff relied on the skill, judgment, representations and foregoing express warranties of the Defendants.  Said warranties and representations were false in that the aforementioned products were not safe and were unfit for the uses for which they were intended.

66.    As a result of the foregoing breach of express warranties by the Defendants, Plaintiff was injured and sustained the harm and damages as herein alleged.

## SIXTH CAUSE OF ACTION
## DECEIT BY CONCEALMENT

67.    Plaintiff incorporates by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

68.    Defendants, from the time that Bextra® was first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, willfully deceived Plaintiff and by concealing from Plaintiff and Plaintiff's physicians and the general public, the true facts concerning said pharmaceutical products, which the Defendants had a duty to disclose.

69.    Defendant Searle conducted a sales and marketing campaign to promote the sale of the aforementioned drug products and willfully deceive Plaintiff and Plaintiff's

16

**COMPLAINT**

physicians and the general public as to the health risks and consequences of the use of Bextra®. Defendants were aware of the foregoing, and that Bextra® was not safe, fit and effective for human consumption, the use of Bextra® is hazardous to health, and Bextra® has a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiff and the harm and damages sustained by Plaintiff as delineated herein.

70.    Defendants intentionally concealed and suppressed the true facts concerning Bextra® with the intent to defraud Plaintiff, in that the Defendants knew that Plaintiff's physicians would not prescribe Bextra®, and Plaintiff would not have used Bextra®, if he were aware of the true facts concerning the dangers of Bextra®.

71.    As a result of the foregoing fraudulent and deceitful conduct by the Defendants, Plaintiff was injured and suffered harm and damages as alleged herein.

## SEVENTH CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION

72.    Plaintiff incorporates by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

73.    Defendants, from the time that Bextra® was first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, made false misrepresentations, as previously set forth herein, to Plaintiff, Plaintiff's physicians and the general public, including but not limited to the misrepresentation that Bextra® was safe, fit and effective for human consumption. Defendants conducted a sales and marketing campaign to promote the sale of Bextra® and willfully deceived Plaintiff, Plaintiff's physicians and the general public as to the health risks and consequences of the use of the aforementioned products.

74.    The Defendants made the foregoing representation without any reasonable ground for believing them to be true. These representations were made directly by Defendants, by sales representatives and other authorized agents of said Defendants, and in publications and other written materials directed to physicians, medical patients and the

17

**COMPLAINT**

public, with the intention of inducing reliance, and the prescription, purchase and use of the subject products.

75.     The foregoing representations by the Defendants were in fact false, in that Bextra® was not safe, not fit and not effective for human consumption, the use of Bextra® is hazardous to health, and Bextra® has a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiff as delineated herein.

76.     The foregoing representations by Defendants were made with the intention of inducing reliance and the prescription, purchase and use of Bextra®.

77.     In reliance on the misrepresentations by the Defendants, Plaintiff was induced to purchase and use Bextra®.  If Plaintiff had known of the true facts and the facts concealed by the Defendants, Plaintiff would not have used Bextra®.  The reliance of Plaintiff upon Defendants' misrepresentations was justified because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

78.     As a result of the foregoing negligent misrepresentations by the Defendants, Plaintiff was injured and suffered harm and damages as alleged herein.

## PUNITIVE DAMAGES ALLEGATIONS
**(As to the First, Second, Third, Sixth, and Seventh Causes of Action, only)**

79.     Plaintiff incorporates by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

80.     The acts, conduct, and omissions of Defendants as alleged throughout this Complaint were willful and malicious and were done with a conscious disregard for the rights of Plaintiff and other users of the Defendants' product and for the primary purpose of increasing Defendants' profits from the sale and distribution of Bextra®.  Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

**COMPLAINT**

81.    Prior to the manufacturing, sale and distribution of said prescribed medication Defendants knew that said medication was in a defective condition as previously described herein and knew that those who were prescribed the medication would experience and did experience severe physical, mental, and emotional injuries.  Further, Defendants, through their officers, directors, managers, and agents, had knowledge that the medication presented a substantial and unreasonable risk of harm to the public, including Plaintiff and as such, said consumers of said drugs were unreasonably subjected to risk of injury or death from the consumption of said product.

82.    Despite such knowledge, Defendants, acting through their officers, directors and managing agents for the purpose of enhancing Defendants' profits, knowingly and deliberately failed to remedy the known defects in said medication and failed to warn the public, including Plaintiff, of the extreme risk of injury occasioned by said defects inherent in said medication.  Said Defendants and their individual agents, officers, and directors intentionally proceeded with the manufacturing, sale, and distribution and marketing of said medication knowing persons would be exposed to serious danger in order to advance Defendants' own pecuniary interest and monetary profits.

83.    Defendants' conduct was despicable, and so contemptible that it would be looked down upon and despised by ordinary decent people, and was carried on by Defendants with willful and conscious disregard for the safety of and the rights of Plaintiff, entitling Plaintiff to exemplary damages.

**WHEREFORE**, Plaintiff prays for judgment against the Defendants, as follows, as appropriate to each cause of action alleged:

1.    Past and future general damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, the exact amount of which has yet to be ascertained, in an amount which will conform to proof at time of trial;

19

**COMPLAINT**

2.      Past and future economic and special damages according to proof at the time of trial;

3.      Past medical and burial expenses according to proof at the time of trial;

     i.   For punitive or exemplary damages according to proof on the First, Second, Third, Sixth, and Seventh causes of action;

4.      Restitution, disgorgement of profits, and other equitable relief;

5.      Injunctive relief;

6.      Attorney's fees;

7.      For costs of suit incurred herein;

8.      For pre-judgment interest as provided by law; and,

9.      For such other and further relief as the Court may deem just and proper.

DATED:  March 19, 2008                    GIRARDI | KEESE


BY: _____
       J. PAUL SIZEMORE
       Attorneys for Plaintiff

**COMPLAINT**

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by rule 38(a) of the *Federal Rules of Civil Procedure*.

DATED:  March 19, 2008

GIRARDI | KEESE

BY: _____
                J. PAUL SIZEMORE
                Attorneys for Plaintiff

**COMPLAINT**